HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| KEVIN GLEASON<br><br>      Plaintiff,<br><br>vs.<br><br>SNOHOMISH REGIONAL FIRE AND RESCUE,<br><br>      Defendant | Case No.: 2:22-cv-01674-TSZ<br><br><br>AFFIDAVIT OF KEVIN GLEASON IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

My name is Kevin Gleason

I am 18 years of age and

I live at 7809 219th Ave SE Snohomish, WA 98290

I do attest and affirm the following:

I state that the following is true and accurate to the best of my recollection:

**Years of service as a Firefighter:**

I have been in the Fire Service for many years. My collective years of experience as a Firefighter is 19.

**Job Duties:**

The following job duties are those that I performed while employed at SRFR prior to being accommodated by being placed on unpaid leave:

1. Responds to fire emergency calls as assigned, and performs tasks that may include search, rescue, ventilation, and suppression. Uses department equipment appropriately to extinguish fires of all types.
   Responds to emergency medical care calls as assigned for assistance to sick or injured people, treating them in accordance with Emergency Medical guidelines, and certification,

2. Drives and operates fire department apparatus as qualified and as appropriate to the scene of the incident,
   Performs daily equipment tests and upkeep tasks, including routine equipment maintenance, to keep all equipment and apparatus in state of readiness,

3. Performs or assists in performing routine inspections and re-inspections,
   Participates in pre-planning fire tactics to improve service, rescue, and safety,
   Checks hydrants and tests available water flow on a regular schedule or as needed and directed,

4. Participates as directed in training classes to maintain and upgrade knowledge, skills, qualifications and certification

5. Performs apparatus, station and ground maintenance as directed

6. Maintains necessary manual and computer records, entering data and generating reports as directed,

7. Performs work in accordance with all safety policies and procedures,

8. May be selected to participate in Special Operations Teams as qualified,

9. May make public presentations, conduct tours of the station, or assist in presenting training classes for other staff, volunteers, community groups, or fire personnel from other districts, Performs other varied duties as directed and/or required.

10. Displays working knowledge of fire codes and nationally recognized standards appropriate to the fire service or understands how to research and reference this information.

AFFIDAVIT OF KEVIN GLEASON IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 2

Each of these duties I completed or performed during the time of the pandemic (March 2020-October 18, 2021) while masked and while following the CV19 playbook and all iterations thereof as required by SRFR. I was able to safely perform my job as evidenced by the fact that I never transmitted CV19 to another employee, co-worker, or patient, or member of the public.

**My reasonable accommodation:**

1. I was informed on or about October 21, 2021 that my options for accommodation was to: use up my leave, request a one year leave of absence, then be dismissed and placed on a disability re-hire list for two years, or get vaccinated (comply with the Proclamation, 21-14).

2. This was the only option my employer, SRFR, gave me. The reasonable accommodation was subject to modification or withdrawal at any-time.

3. During my accommodation process there was no discussion regarding my requests, and I was told that I would be accommodated both before and during the meeting. Thereafter, and without any discussion I was given the "accommodation" of going on leave and then being discharged and placed on the disability rehire list. I had to seek other work as if I had been terminated. This accommodation was unreasonable, and caused me great distress and uncertainty.

**Leave without pay is not an accommodation for Firefighters:**

1. On average, less than 5% of the candidates applying for a Firefighter position with a department are likely to get a badge once the process is said and done.

2. Lateral firefighting positions are pretty rare. Most Fire departments expect a life-long commitment of all Firefighters .

3. In contrast, Nurses, doctors, plumbers, carpenters don't have to redo their trade school when moving jobs, but firefighters do.

4. During the time of the vaccine mandate, lateral firefighter positions were none to be found. Any fire departments that were hiring, were hiring for entry level fire positions, making a burdensome pay cut to any previous career Firefighter.

5. Those positions require the new hire to go back through a fire academy and go through, at minimum, a one year probationary period.

6. Any departments that did offer accommodations to the vaccine mandate, reserved those for grand-fathered existing Firefighters.

7. Unpaid leave for a year makes it hard for Firefighters, as they aren't really lateral transfer type jobs. The fire industry in particular, a leave without pay is the same as being terminated. Firefighters cannot just "go to" a new Fire Dept.

8. Lateral Firefighter positions to another department were nearly impossible, even prior to Covid-19.

AFFIDAVIT OF KEVIN GLEASON IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 3

9.  The mandate made it nearly impossible for a lateral position, which is exactly why the Plaintiffs were so active in getting their jobs back at SRFR and fought to return to the line.

**My requested accommodation:**

1.  I was told that I was going to be accommodated prior to my Accommodation Request Interactive meeting with SRFR's HR Department. In that meeting I requested for my accommodation masking, testing, and to follow the COVID-19 playbook.

**Safety procedures during the pandemic:**

1.  At no time did my N95 masks fall down while working.

2.  I have never tested positive for COVID-19 while working for SRFR. I never received an email from SRFR, at any point, that a firefighter had transmitted COVID-19 to another firefighter, a member of the public, nor have I ever heard of any such instance. I do not know of any instance, when an unvaccinated or vaccinated firefighter showed up to work, and then later tested positive for COVID-19, after being on a call or being on site.

3.  Station 82 was my assigned station. There are 9 sleeping rooms to allow for individual sleeping quarters. There are 4 bathrooms allowing for proper social distancing. In the day room, there's more than adequate spacing to maintain 6 feet social distancing. As well as being able to maintain social distancing within the kitchen. 6ft social distancing was able to be performed at every shift.

4.  When driving any of the SRFR fire engines, all the seats in the apparatuses are 6 feet apart. Thus, social distancing was maintained. Masking in the fire engines was always maintained per the COVID-19 playbook.

5.  In the ambulance, SRFR installed plexiglass between the patient compartment and the driver compartment. Doing this allowed for full isolation between the driver and the patient compartment. Masking in the ambulances was always maintained per the Districts COVID-19 playbook.

6.  As a Driver Operator my job duties did not change during the pandemic. I was able to perform my duties in widely diverse environments, in the physical presence of patients, coworkers, and the public.

7.  From January 2020-October of 2021, I followed SRFR's COVID 19 "playbook", as a Firefighter, to include: wearing a N-95 face mask, DAILY temperature checks prior to the start of my shift, SPO2 monitoring, maintaining 6 feet of social distancing- except when alone, sleeping, or eating; Surgical masks were required on all patients; when engaged in aerosol generating procedures (AGP) donning full PPE (to include: goggles, N-95 mask, Face Shield, gown, gloves, and booties); when exposed to a patient that is suspected or

AFFIDAVIT OF KEVIN GLEASON IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 4

POSITIVE COVID test- complete decontamination of the Ambulance with a fog generating disinfectant spray, cleaning and changing uniforms, and showering immediately after exposure.

8. Rapid tests do not delineate (in the results) an unvaccinated person vs. a vaccinated person. Lack of accommodation letter.

**Lack of accommodation letter**

1. Chief O'Brien wrote, " After you have depleted your paid leave, you may also request a one year leave of absence without pay under article 13.2 of the CBA. As this is already afforded to me, per my collective bargaining agreement, this not a religious accommodation.

**Comparison to Tacoma Fire Department:**

1. My wife has been a firefighter with Tacoma Fire Department since 2011. The job duties of a Tacoma firefighter include all listed in the aforementioned section titled "Job Duties" for a SRFR firefighter. The Tacoma Fire Department provided reasonable accommodation for unvaccinated firefighters as outlined in Tacoma Fire Department Special Order #21-88 CITY OF TACOMA COVID-19 SAFETY PROTOCOLS DIRECTIVE (Exhibit A). Tacoma Fire Department provided reasonable accommodation to all unvaccinated firefighters (over 40 members). The safety protocol directives did not differentiate between vaccinated and unvaccinated members.

2. Vaccination status was considered Protected Health Information (PHI) with minimum necessary disclosure. No safety protocols resulted in segregation or identification of unvaccinated members.

3. My wife, Jill Gleason, spoke at the October 2021 SRFR Board of Commissioners Meeting, informing the Board and Fire Chief O'Brien that Tacoma Fire Department had given reasonable accommodation to over 40 unvaccinated firefighters in the Tacoma Fire Department while complying with Proclamation 21-14.

4. Tacoma Fire Department was never denied entry to a facility that summoned a 911 response, including health care facilities and Pierce County Department of Corrections facilities.

AFFIDAVIT OF KEVIN GLEASON IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 5

**Personal Interaction with Washington Cities Insurance Authority Representative:**

1. After October 18,2021, 1 personally contacted Lisa Knapton, a representative of Washington Cities Insurance Authority and the designated liaison to SRFR. She stated in a phone conversation that WICA has never had coverage for communicable diseases because there has never been a lawsuit from a patient against a provider for communicable diseases, and any lawsuit would be impossible to prove and therefore frivolous and that is why they do not provide coverage for communicable disease.

2. Marysville Fire District is also insured by Washington Cities Insurance Authority. Marysville Fire District accommodated its members and Marysville Fire District has a mutual aid agreement with SRFR. Unvaccinated Marysville Fire District employees responded into SRFR's response district and worked alongside SRFR employees while unvaccinated SRFR employees were refused employment.

**Why my Faith prevents me from taking the COVID-19 Vaccine:**

I Kevin Gleason, have been born and raised as a Christian. I was baptized as an infant and raised by Christians. As a man, follow the path of Jesus Christ. My conscience and everything I do is led by the Holy Spirit. I pray to God about every major life decision, especially those that affect my family and career. When the vaccine came out I prayed and was led by the Holy Spirit not to take the vaccine. When the mandate came down from SRFR I prayed and was led by The Holy Spirit not to betray my sincerely held religious belief.  All aspects of my life are led by The Holy Spirit through conscience, as I have a part of the Holy Trinity dwelling within, and as Jesus was a gift from God so is the Holy spirit a gift from Jesus to each of us. Each distinct and part of the whole, but separate in their mission and purpose for humanity and God's plan. My life is dedicated to my savior and  I will never surrender and allow anything to compromise my vow to God.

I CERTIFY THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY RECOLLECTION AND KNOWLEDGE, I SIGN UNDER PENALTY OF PERJURY OF THE LAWS OF THE STATE OF WASHINGTON SIGNED IN FRONT OF A NOTARY DECEMBER /5   , 2023.

Kevin Gleason

AFFIDAVIT OF KEVIN GLEASON IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 6

State of Washington County of _Snohomish_

I certify that I know or have satisfactory evidence that _Kevin A Gleason_ (name of person) is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument and acknowledged it to be (his/her) free and voluntary act for the uses and purposes mentioned in the instrument.

Dated: _12/15/2023_

(Seal or stamp)

_____Monica_____ Signature

_____Notary_____ Title

My appointment expires: _03/03/2027_

AFFIDAVIT OF KEVIN GLEASON IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 7

# TACOMA FIRE DEPARTMENT
## SPECIAL ORDER #21-88
### September 3, 2021

**TO:**        **ALL PERSONNEL**

**SUBJECT:**   **CITY OF TACOMA COVID-19 SAFETY PROTOCOLS DIRECTIVE**

On September 2, 2021, the Emergency Management department of the City of Tacoma sent out a revised COVID-19 Safety Protocols Directive to all employees. In short, the directive is a return to the previous rules that applied for the majority of 2020, with some modifications for certain situations.

The following rules are specifically applicable to our Department, however, all TFD employees are responsible for reviewing the entirety of the Directive.

- All employees, **regardless of vaccination status**, must wear a face covering while indoors, or while in outdoor spaces where physical distancing is not possible. When employees are working alone in segregated spaces, they may remove their face covering. It is acceptable to remove your mask while actively eating or drinking.
- Masks shall be worn when in a City of Tacoma vehicle, unless by yourself.
- No outside visitors are allowed in stations. This shall include community blood pressure checks. No off-duty personnel are allowed to use the station gym or weight room. Off-duty personnel should avoid visiting stations or workplaces if at all possible.
- Health screenings shall continue to be performed daily at all work locations.
- Occupancy limitations will require a minimum physical distancing of 6 feet or more, not to exceed a maximum of 50% occupancy. Training, company conferences, or other similar events should be scheduled in accordance with the Directive's specifications regarding occupancy. Whenever possible, virtual meetings should be used in place of in-person meetings.

In all situations, TFD personnel shall strive to meet the goals of this Directive, which is to limit the spread of the COVID-19 virus. By minimizing the spread of the pandemic among our employees, we can help ensure all of us are ready to respond to the citizens we serve.


**SIGNATURE ON FILE**                    **SIGNATURE ON FILE**

Toryono Green                            Michael S. Mitchell, Deputy Chief
Fire Chief                               Operations Bureau

TG:MSM:av