UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DAVID PETERSEN et. al., <br><br> Plaintiffs, <br><br> v. <br><br> SNOHOMISH REGIONAL FIRE AND RESCUE et. al., <br><br> Defendants. | C22-1674 TSZ <br><br> ORDER |

THIS MATTER comes before the Court on Defendant Snohomish Regional Fire & Rescue's motion for summary judgment, docket no. 23, and Plaintiffs David Petersen,[1] Beau Watson, Jay Stickney, Evan Merritt, Norm Alan Peterson II, Riley Korf, Ryan Stupey, and Kevin Gleason's motion for partial summary judgment, docket no. 27. Having reviewed all papers filed in support of, and in opposition to, the motions, the Court enters the following Order.

---

[1] It appears that the Complaint incorrectly spells David Petersen's name as David "Peterson." Compare Compl. (docket no. 1), with Pls.' Exemption Requests (docket no. 1-4).

ORDER - 1

**Background**

**A.      The Parties**

Plaintiffs Petersen, Watson, Stickney, Merritt, Peterson, Korf, Stupey, and Gleason are employed by Defendant Snohomish Regional Fire & Rescue ("Snohomish Fire") in the positions of Firefighter/Emergency Medical Technician ("EMT"), Firefighter/Paramedic, Driver/Operator/EMT, Driver/Operator/Paramedic, Fire Lieutenant/EMT, or Fire Lieutenant/Paramedic (collectively, "firefighters").  O'Brien. Decl. at ¶ 4 (docket no. 25).[2]  Plaintiffs each held either a Washington State EMT certification or paramedic certification.  Id.

Snohomish Fire provides fire suppression and emergency medical services to roughly 175,000 people across approximately 135 square miles of Snohomish County, Washington.  Id. at ¶ 3.  Snohomish Fire's mission is to "[s]ave lives, protect property, safeguard the environment, and take care of people."  Id.  At all times relevant to this case, Snohomish Fire operated eleven fire stations.[3]  Id.  In 2021, Snohomish Fire employed 192 career firefighters and 85% of its emergency calls were for emergency medical services.  Id. at ¶¶ 4, 8.  When responding to calls, firefighters may enter private homes, adult care facilities, retirement homes, schools, businesses, and the Monroe Correctional Complex, and are expected to provide medical assistance as needed.  Id. at ¶ 8.  In most vehicles used to respond to calls, firefighters sit in a cab with two to three

---

[2] Plaintiffs do not dispute the material facts related to their work duties as outlined in the O'Brien Declaration.  Pls.' Mot. at 2–4 (docket no. 27); Pls.' Resp. at 2 (docket no. 40).

[3] As of January 2023, Snohomish Fire operates ten fire stations.  O'Brien Decl. at ¶ 3 n.2.

ORDER - 2

other firefighters.  Id.  When transporting a patient, one or more firefighters rides in the vehicle compartment with the patient.  Id.

Certain career firefighters are represented by the International Association of Fire Fighters, Local 2781 (the "Union").  O'Brien Decl. at ¶ 5; Ex. B to O'Brien Decl. (docket no. 25-1 at 11–60).  Firefighters choose their home station assignments by seniority, per the collective bargaining agreement between Snohomish Fire and the Union.  O'Brien Decl. at ¶ 6.  Although each firefighter has a home station, they may work at other stations when working overtime to cover for absences, to create space when training a probationary firefighter, or because their skills are needed at another station.  Id.

Firefighters work 24-hour shifts, working and living in fire stations when they are not responding to calls.  Id. at ¶¶ 6– 7.  They have beds available in single rooms or rooms divided by screens, access to toilets and showers in shared bathrooms, access to workout equipment, and access to communal areas to cook, eat, use computers, watch television, and meet for briefings.  Id.

**B.    The COVID-19 Pandemic, the Development of Vaccines, and Washington's Vaccine Mandate**

Snohomish Fire's leadership relied on guidance from public health authorities at the local, state, and federal levels to determine its COVID-19 policies and procedures.  O'Brien Decl. at ¶ 9; O'Brien 30(b)(6) Dep. at 14:23–15:5, 100:24–101:3, Ex. J to Phillips Decl. (docket no. 24-1 at 94–116).  In determining its COVID-19 policies, Snohomish Fire balanced protecting employees and the public from COVID-19, while still providing vital emergency medical and fire suppression services.  O'Brien Decl. at

ORDER - 3

¶ 9; O'Brien 30(b)(6) Dep. at 12:23–15:5, 46:18–47:3, 84:24–85:21, 139:15–141:15, Ex. J to Phillips Decl. (docket no. 24-1 at 94–116). Snohomish Fire worked with a multi-agency "Force Protection" group to develop a "COVID Playbook" (the "Playbook") containing protection protocols to be followed by firefighters. O'Brien Decl. at ¶ 9; O'Brien 30(b)(6) Dep. at 27:13–18, 46:18–47:3, Ex. J to Phillips Decl. (docket no. 24-1 at 94–116); McConnell Dep. at 9:24–10:8, 15:19–17:25, 18:12–16, 21:9–15, Ex. I to Phillips Decl. (docket no. 24-1 at 70–93). The Playbook included protection protocols such as masking, social distancing, and testing. Ex. A to Tribbett Decl. (docket no. 28 at 4–40).

On February 29, 2020, Washington Governor Jay Inslee proclaimed a State of Emergency because of COVID-19. Def.'s Mot. at 3 (docket no. 23) (citation omitted); Pls.' Resp. at 2–3 (docket no. 40). Between December 2020 and February 2021, the United States Food and Drug Administration ("FDA") issued Emergency Use Authorizations for three COVID-19 vaccines developed by Pfizer, Moderna, and Johnson & Johnson. Lynch Decl. at ¶¶ 6–8, 16 (docket no. 26). The FDA gave full approval to Pfizer's vaccine for people 16 and older in August 2021, and to Moderna's vaccine for people 18 and older in January 2022. Id. at ¶¶ 17–18. During the initial vaccine roll-out in late 2020, firefighters were among the first groups of people to have access to the vaccines. O'Brien Decl. at ¶ 10.

In August 2021, Governor Inslee issued Proclamation 21-14 (the "Proclamation"), which prohibited healthcare providers such as firefighters from working after October 18, 2021, if not fully vaccinated against COVID-19. O'Brien Decl. at ¶¶ 11–12; Ex. F to

ORDER - 4

O'Brien Decl. (docket no. 25-2 at 13–14).  The Proclamation stated that an employee could request an exemption from the vaccine requirement based on "a sincerely held religious belief" and noted that employers were not required to accommodate employees if doing so "would cause undue hardship."  O'Brien Decl. at ¶¶ 11–12; Ex. F to O'Brien Decl. (docket no. 25-2 at 13–14).

C.  **Snohomish Fire's Response to Washington's Vaccine Mandate**

Following the Proclamation, Snohomish Fire provided its firefighters with information about the vaccination requirement, as well as the process for requesting religious exemptions.  O'Brien Decl. at ¶ 12; Ex. G to O'Brien Decl. (docket no. 25-2 at 60–62).  Out of Snohomish Fire's 192 firefighters, 46 requested an exemption and accommodation from the vaccination requirement.  O'Brien Decl. at ¶ 14.  Plaintiffs, who were assigned to seven different fire stations, requested exemptions based on their religious beliefs.[4]  Id. at ¶¶ 6, 14.

---

[4] Specifically, Plaintiff Petersen noted that his faith guides him through life and he could not get vaccinated because doing so would put his connection with God at risk.  Pls.' Exemption Requests (docket no. 1-4 at 2); Petersen Dep. at 28:12–18, 28:23–29:8, Ex. V to Tribbett Decl. (docket no. 41 at 265–77).  Plaintiff Gleason stated that he held sincere religious beliefs that prevented him from getting vaccinated.  Pls.' Exemption Requests (docket no. 1-4 at 3); Gleason Dep. at 23:7–25:14, Ex. S to Tribbett Decl. (docket no. 41 at 252–56).  Plaintiff Korf stated that he could not get vaccinated in good conscience because the Holy Spirit lives inside him and he treats his body as a temple.  Pls.' Exemption Requests (docket no. 1-4 at 6); Korf Dep. at 27:2–19, Ex. T to Tribbet Decl. (docket no. 41 at 257–61).  Plaintiff Stupey requested an exemption because the vaccines were manufactured or tested using cell lines from abortion procedures and it would be a sin against God for him to get vaccinated.  Pls.' Exemption Requests (docket no. 1-4 at 7–8).  Plaintiff Watson noted that he could not get vaccinated because his faith allows him to make his own medical decisions based on his free will, the vaccines were derived from aborted fetal cells, and he had already been vaccinated by God and recovered from a natural COVID-19 infection.  Pls.' Exemption Requests (docket no. 1-4 at 9).  Plaintiff Stickney stated that getting vaccinated would be wrong for him because he is a follower of Jesus Christ and believes that his body is the holy temple of the living God.  Pls.' Exemption Requests (docket no. 1-4 at 10); Stickney Dep. at 20:14–23:11, Ex. X to Tribbett Decl. (docket no. 41 at 284–91).  Plaintiff Peterson stated that getting vaccinated would be a violation of his moral conviction and a sin against the most Holy God.

Snohomish Fire's Human Resources staff met with each employee that requested an exemption to seek information about their exemption request and any accommodations suggestions the employee had. Id. at ¶ 14. While Snohomish Fire was collecting and evaluating information about the risks and other costs associated with potential accommodations, it negotiated with the Union regarding the impacts of the vaccination requirement. Id. at ¶ 16. On October 14, 2021, Snohomish Fire and the Union approved a Memorandum of Understanding ("MOU") that modified the collective bargaining agreement to provide accommodation options for firefighters if Snohomish Fire determined they could not be accommodated in their healthcare roles. Id.; Ex. K to O'Brien Decl. (docket no. 25-2 at 113–17). The MOU modified requirements for using accrued leave time so that a firefighter could continue pay and benefit accrual during leave as an accommodation. O'Brien Decl. at ¶ 16. Upon exhaustion of paid leave, Snohomish Fire communicated that it would approve requests from firefighters for a personal leave of absence of up to a year. Id. at ¶¶ 16, 18. After that, or if a firefighter chose to leave employment, the MOU allowed that firefighter to be placed on a disability list, which gave them priority rehire rights with no loss of rank, seniority, or benefit accrual status for two years. Id.

Snohomish Fire granted all of the Plaintiffs' requests for an exemption based on religious grounds but determined that it could not accommodate unvaccinated firefighters

---

Pls.' Exemption Requests (docket no. 1-4 at 12); Peterson Dep. at 19:17–22:4, Ex. W to Tribbett Decl. (docket no. 41 at 278–83).

ORDER - 6

in their healthcare roles without imposing an undue hardship on its operations.[5]  Id. at ¶ 15.  In letters dated October 21, 2021, Snohomish Fire notified employees who had requested exemptions, including Plaintiffs, that it had been unable to identify a reasonable accommodation that would enable them to perform the essential functions of their positions without imposing an undue hardship on Snohomish Fire, and that it did not currently have alternative positions.  Id. at ¶ 17, Ex. L to O'Brien Decl. (docket no. 25-2 at 118–34); Letters Denying Pls.' Exemption Requests, Ex. 6 to Compl. (docket no. 1-6).  The letters highlighted how Plaintiffs' positions require performance of emergency medical services and "must be done in the physical presence of patients, coworkers, and the public."  Id.  In addition, the letters informed Plaintiffs that performing the essential functions of their positions, "without being fully vaccinated against COVID-19, poses a threat to the health and safety of yourself, others in the workplace, and the public that we

---

[5] Snohomish Fire maintains it determined accommodating Plaintiffs' vaccine exemption requests would have been an undue hardship because (1) unvaccinated frontline employees had a greater risk of contracting and transmitting "the COVID-19 virus to patients, members of the public, and other employees;" (2) unvaccinated frontline employees cannot always socially distance because of their job duties and testing is not always accurate; (3) it had "a strong interest in maintaining the public's confidence in [its] ability to provide reasonably safe emergency fire and medical services" and wanted "to assure the public that it can call 911 without fear of greater risk of infection;" (4) "[a]t the time, PPE and testing kits were scarce and costly;" (5) "[o]n September 23, 2021, the Washington State Department of Corrections ("DOC") informed [Snohomish Fire] that unvaccinated staff could not perform on-site work at any DOC facility and no reasonable accommodation was available for on-site work.  [Snohomish Fire] is contracted with the DOC to provide emergency fire and medical services to the Monroe Correctional Complex.  Logistically, [Snohomish Fire] could not serve the Complex if a quarter of its frontline staff was unvaccinated and would have lost $376,933.93 annually in revenue if it stopped serving the Complex;" and (6) "[o]n October 14, 2021, [Snohomish Fire]'s insurance pool, Washington Cities Insurance Authority ("WCIA"), informed [Snohomish Fire] that if any patient sued [Snohomish Fire] and alleged that an unvaccinated employee gave them COVID-19, the insurance pool would not defend or indemnify [Snohomish Fire] against the lawsuit because of a policy exclusion for 'communicable diseases.'"  O'Brien Decl. at ¶ 15 (docket no. 25).

ORDER - 7

serve." Id.  Snohomish Fire did not have vacant non-patient care, day-shift positions to which it could reassign firefighters to decrease the risk of COVID-19 transmission to or from patients and among employees.  O'Brien Decl. at ¶ 18.  After Snohomish Fire determined it could not accommodate the 46 employees who requested exemptions in their healthcare roles and that it lacked adequate reassignment options, the employees were allowed to remain in paid status using leave benefits.  Id.  When their benefits approached depletion, Snohomish Fire encouraged them to apply for a one-year leave of absence.  Id.; Ex. M to O'Brien Decl. (docket no. 25-2 at 135–37).  All such requests were approved.  O'Brien Decl. at ¶ 18.

Beginning in late 2021, Snohomish Fire monitored information from public health authorities regarding COVID-19 conditions and the risk posed by and to Snohomish Fire's unvaccinated employees.  Id. at ¶¶ 19–20; McConnell Dep. 66:17–67:14, 101:20–102:1, 102:12–103:1, Ex. I to Phillips Decl. (docket no. 24-1 at 70–93); O'Brien 30(b)(6) Dep. 98:19–99:2, 139:15–141:15, Ex. J to Phillips Decl. (docket no. 24-1 at 94–116).  In April 2022, Fire Chief Kevin O'Brien directed staff to evaluate whether Snohomish Fire could modify the accommodations offered to unvaccinated firefighters.  O'Brien Decl. at ¶ 20; Ex. N to O'Brien Decl. (docket no. 25-2 at 138–43).  At a meeting on April 28, 2022, Snohomish Fire's Board of Commissioners approved a motion directing Fire Chief O'Brien and Snohomish Fire staff to reevaluate what accommodations Snohomish Fire could provide so unvaccinated employees would be able to return to operational duty.  O'Brien Decl. at ¶ 21; Ex. O to O'Brien Decl. (docket no. 25-2 at 144–48).  In letters dated May 9, 2022, Snohomish Fire informed unvaccinated employees that they now had

two new accommodation options: (1) remain on leave, or (2) return to their firefighter positions, following applicable Playbook safety guidelines, including those specific to unvaccinated employees.  O'Brien Decl. at ¶ 22; Ex. P to O'Brien Decl. (docket no. 25-2 at 149–227).  Plaintiffs Gleason, Merritt, Petersen, and Watson elected to return to their firefighter positions as soon as possible under the conditions offered by Snohomish Fire and returned from leave effective June 6, 2022.  O'Brien Decl. at ¶ 23.  Plaintiffs Korf, Peterson, and Stupey elected to remain on leave and returned to their firefighter positions at later dates.[6]  Id.

### D. Plaintiffs' Lawsuit

In November 2022, Plaintiffs initiated this lawsuit against Defendants Snohomish Fire, Fire Chief Kevin O'Brien,[7] and Does 1–10.[8]  Compl. (docket no. 1).  Plaintiffs assert two causes of action: (1) failure to accommodate their religious beliefs in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), and (2) failure to accommodate their religious beliefs under Washington's Law Against Discrimination ("WLAD").  Id.

---

[6] It is unclear when Plaintiff Stickney returned to work.  The O'Brien Declaration states that Plaintiff Stickney elected to return both on June 6, 2022, and at a later date.  O'Brien Decl. at ¶ 23.  The Stickney Affidavit does not specify when Plaintiff Stickney returned to work.  Stickney Affidavit (docket no. 34).  Nevertheless, when Plaintiff Stickney returned to work is not material to resolution of the instant motions.

[7] The parties subsequently stipulated to the dismissal of Defendant Fire Chief O'Brien.  See Order (docket no. 15).

[8] "District courts in the Ninth Circuit consistently hold that the opportunity to name Doe defendants ends with the close of discovery."  Bratcher v. Polk Cnty., No. 3:20-cv-02056, 2022 WL 17184419 at *5 (D. Or. Sept. 1, 2022), report and recommendation adopted, 2022 WL 17178266 (D. Or. Nov. 23, 2022) (citations omitted).  The discovery deadline in this case has expired, and Plaintiffs have not named the Doe Defendants.  Moreover, Plaintiff do not argue that their claims against the Doe Defendants should not be dismissed.  Pls.' Mot. (docket no. 27); Pls.' Resp. (docket no. 40); Pls.' Reply (docket no. 53).  Thus, Plaintiffs' claims against the Doe Defendants are DISMISSED.

ORDER - 9

at ¶¶ 23–32.  Snohomish Fire moves for summary judgment, asking the Court to dismiss Plaintiffs' Title VII and WLAD claims because Snohomish Fire "could not provide [Plaintiffs] with a reasonable accommodation in their healthcare roles without imposing an undue hardship on [Snohomish Fire]'s operations, and no reasonable accommodation apart from leave was available."  Def.'s Mot. at 1 (docket no. 23).  Plaintiffs move for partial summary judgment, seeking a finding that, as a matter of law, Snohomish Fire failed to accommodate their exemption requests from the COVID-19 vaccine requirement.  Pls.' Mot. at 1 (docket no. 27).

**Discussion**

**A.      Summary Judgment Standard**

The Court shall grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A fact is material if it might affect the outcome of the suit under the governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  To survive a motion for summary judgment, the adverse party must present affirmative evidence, which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn.  Id. at 255, 257.  When the record, taken as a whole, could not, however, lead a rational trier of fact to find for the non-moving party on matters which such party will bear the burden of proof at trial, summary judgment is warranted.  See Matsushita Elec. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); see also Celotex, 477 U.S. at 322.

B. **Snohomish Fire's Motion to Strike**

In its reply and response, Snohomish Fire filed a motion to strike. Def.'s Reply at 1–3 (docket no. 49); Def.'s Resp. at 1–3 (docket no. 51). Snohomish Fire seeks to strike certain "statements and evidence in Plaintiffs' supporting declarations," such as "Plaintiffs' assertions that they were 'able to safely perform [their] job' and 'never transmitted CV-19 to another employee, co-worker, or patient, or member of the public.'" Def.'s Reply at 1 (citation omitted). The Court declines to individually address each statement Snohomish Fire seeks to strike but has considered only admissible evidence in reaching its decision.

C. **Plaintiffs' Title VII and WLAD Claims**

Snohomish Fire argues that it is entitled to summary judgment on Plaintiffs' claims because (1) six of the Plaintiffs' objections to the vaccination requirement were not based on bona fide religious beliefs; (2) providing Plaintiffs with their preferred accommodation of continuing to work while unvaccinated would have imposed an undue hardship on Snohomish Fire; "and (3) there were no other reasonable accommodations that would have enabled them to remain in the workplace from October 2021 until they were returned to duty in spring 2022." Def.'s Mot. at 11. Under Title VII, employers are prohibited from discriminating against any individual with respect to the terms, conditions, or privileges of employment, because of the individual's religion. 42 U.S.C. § 2000e-2(a). An employer must "reasonably accommodate" an employee's religious practices unless such an accommodation would impose "undue hardship" on the conduct of the employer's business. Id. at § 2000e(j). Similarly, under the WLAD, employers

ORDER - 11

1  may not refuse to hire, discharge, bar from employment, or discriminate in compensation
2  or other terms of employment against any person because of their religion.  RCW
3  § 49.60.180; Kumar v. Gate Gourmet, Inc., 180 Wn.2d 481, 489, 325 P.3d 193 (2014).
4      The parties agree that Plaintiffs' Title VII claim and WLAD claim can be analyzed
5  together.  Pls.' Mot. at 8–9; see Def.'s Mot. at 10–11.  To analyze failure to accommodate
6  religious belief claims, courts use a burden-shifting framework.  Bolden-Hardge v. Office
7  of Cal. State Controller, 63 F.4th 1215, 1222 (9th Cir. 2023) (Title VII); Kumar, 180
8  Wn.2d at 481, 501–02, 325 P.3d 193 (WLAD).  First, the employee must plead a prima
9  facie failure to accommodate religious belief case.  Id.  Second, if the employee can plead
10 a prima facie case, the burden shifts to the employer to show either that it initiated good
11 faith efforts to accommodate the employee's religious practices or that it could not
12 reasonably accommodate the employee without undue hardship.  Peterson, 358 F.3d at
13 606; Tiano v. Dillard Dep't Stores, Inc., 139 F.3d 679, 681–82 (9th Cir. 1998).  The
14 Court addresses whether Plaintiffs have set forth a prima facie case and, if so, whether
15 Snohomish Fire proved that it could not reasonably accommodate Plaintiffs without
16 undue hardship.
17      **1.      Prima Facie Case**
18      To set forth a prima facie case of discrimination, Plaintiffs must show that (1) they
19 "had a bona fide religious belief, the practice of which conflicts with an employment
20 duty;" (2) they "informed [their] employer of the belief and conflict;" and "(3) the
21 employer discharged, threatened, or otherwise subjected [them] to an adverse
22 employment action because of [their] inability to fulfill the job requirement." Peterson v.
23

ORDER - 12

Hewlett-Packard Co., 358 F.3d 599, 606 (9th Cir. 2004). Plaintiffs maintain that they "can establish a prima facie case of discrimination" because (1) they "hold sincere beliefs," (2) they "informed the employer of [their] beliefs and the conflict with the [COVID-19] vaccine requirement," and (3) Snohomish Fire "discharged them and/or took adverse action." Pls.' Mot. at 9 (citations omitted). Snohomish Fire does not dispute that Plaintiffs can establish the second and third elements of their prima facie case. Instead, Snohomish Fire now argues that six plaintiffs, "Plaintiffs Peterson, Gleason, Merritt, Petersen, Stickney, and Korf cannot establish a prima facie case because their objections to the COVID-19 vaccination requirement were not based on bona fide religious beliefs."[9] Def.'s Mot. at 11; Def.'s Resp. at 12 (docket no. 51). Because "the burden to allege a conflict with religious beliefs is fairly minimal[,]" Beuca v. Wash. State Univ., No. 2:23-CV-0069, 2023 WL 3575503, at *2 (E.D. Wash. May 19, 2023) (citation omitted),[10] and precedent cautions "against questioning the sincerity of a Title VII plaintiff's alleged religious beliefs[,]" Bordeaux v. Lions Gate Entm't, Inc., No. 222CV04244SCWPLA, 2023 WL 8108655, at *12 (C.D. Cal. Nov. 21, 2023) (citations omitted), the Court declines to scrutinize Plaintiffs' religious beliefs.[11] Instead, for

---

[9] Snohomish Fire does not challenge Plaintiffs Watson's and Stupey's prima facie case for purposes of summary judgment. Def.'s Mot. at 11 n.3 (docket no. 23). Snohomish Fire also does not challenge the second and third elements of Plaintiffs' prima facie case. See Def.'s Mot. (docket no. 23); Def.'s Reply (docket no. 49); Def.'s Resp. (docket no. 51).

[10] Beuca is on appeal in the Ninth Circuit.

[11] The Court notes that Snohomish Fire's position in its motion is contrary to its position in its letters to Plaintiffs. On October 21, 2021, Snohomish Fire notified each Plaintiff by letter that their requests "for a religious exemption [was] based on a sincerely held religious belief" and that their requests for a religious

ORDER - 13

1   purposes of the instant motions, the Court assumes that Plaintiffs have established a bona

2   fide religious belief and have set forth their prima facie case, and that the burden shifts to

3   Snohomish Fire to show that it could not reasonably accommodate Plaintiffs' beliefs

4   without undue hardship.  See Bordeaux, 2023 WL 8108655, at *11–12.

5       **2.**    **Undue Hardship**

6       Snohomish Fire contends that it "was not required by Title VII and WLAD to

7   accommodate Plaintiffs in their firefighter roles because doing so would have imposed an

8   undue hardship."  Def.'s Mot. at 14.  Title VII "requires employers to accommodate the

9   religious practice of their employees unless doing so would impose an 'undue hardship

10   on the conduct of the employer's business.'"  Groff v. DeJoy, 600 U.S. 447, 453–54

11   (2023) (quoting 42 U.S.C. § 2000e(j)); Kumar, 180 Wn.2d at 496, 325 P.3d 193 (noting

12   that Washington courts look to Title VII cases for help interpreting the WLAD).  To

13   establish an undue hardship, the employer must prove "that the burden of granting an

14   accommodation would result in substantial increased costs in relation to the conduct of its

15   particular business."[12]  Groff, 600 U.S. at 470 (citation omitted).  "[C]ourts must apply

16   the test in a manner that takes into account all relevant factors in the case at hand,

---

19   exemption from the vaccination requirement were approved.  Ex. L to O'Brien Decl. (docket no. 25-2 at 118–34).

20   [12] Under the WLAD, "an 'undue hardship' results whenever an accommodation 'require[s an employer] to bear more than a *de minimis* cost.'"  Kumar, 180 Wn.2d at 502, 325 P.3d 193 (quoting Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 84 (1977) (alterations in original)).  Undue hardship was clarified in Groff after the relevant timeframe in this case to mean "substantial increased costs."  See Pls.' Mot. at 14 (docket no. 27); Pls.' Resp. at 13 (docket no. 40).  Evidence in this case also satisfies the "substantial increased costs" standard for undue hardship articulated in Groff.

ORDER - 14

including the particular accommodations at issue and their practical impact in light of the nature, 'size and operating cost of [an] employer.'" Id. at 470–71.  The "undue hardship" defense is a complete defense to WLAD and Title VII failure-to-accommodate claims. See 42 U.S.C. § 2000e(j); Kumar, 180 Wn.2d at 501–02, 325 P.3d 193.

Plaintiffs argue that masking, PPE, testing, and social distancing are accommodations that would have allowed them to continue working from October 18, 2021, to the end of April 2022, without imposing an undue hardship on Snohomish Fire. Pls.' Mot. at 16–22 (docket no. 27); Pls.' Resp. at 12–13 (docket no. 40).  Snohomish Fire counters that allowing Plaintiffs to work while unvaccinated would have been an undue hardship even with masking, testing, PPE, and social distancing measures in place. Def.'s Resp. at 15–20 (docket no. 51).  In support of its argument, Snohomish Fire cites to the expert opinion of Dr. John Lynch.  Id.  As an initial matter, the Court agrees with Snohomish Fire that Dr. Lynch is an expert on this subject.[13]  See Phillips Decl. at ¶ 12 (docket no. 24).  Dr. Lynch explains why masking, PPE, testing, and social distancing are less effective than vaccines with respect to reducing the spread of COVID-19.  Lynch Decl. (docket no. 26).

---

[13] Plaintiffs did not file a motion to strike Dr. Lynch's opinion.  Instead, Plaintiffs argue that "Dr. Lynch has no experience in para-military operations, he is not a medical advisor to any emergency service district, nor is he someone whom [Snohomish Fire] consulted at the time their decisions were made." Pls.' Resp. at 15 (docket no. 40).  The Court concludes that Dr. Lynch is qualified as an expert on infectious diseases generally and COVID-19 specifically.  See Lynch Decl. at ¶¶ 1–2.  Dr. Lynch reviewed information about Plaintiffs' job duties, work environment, and proposed accommodations, and Snohomish Fire's assessment of the risks, and provided opinions relevant to the undue hardship analysis. See id. at ¶¶ 26–28, 34, 37–38, 42–44.

ORDER - 15

With respect to masking and PPE, Plaintiffs note that Snohomish Fire required vaccinated employees to wear masks and contend that masks and PPE prevent the spread of COVID-19 regardless of vaccination status. Pls.' Mot. at 19–20 (docket no. 27); Pls.' Resp. at 18 (docket no. 40). Dr. Lynch notes that masks and PPE work only when worn and are complements to, rather than substitutes for, getting vaccinated. Lynch Decl. at ¶ 28; Ex. B to Lynch Decl. (docket no. 26-1 at 27–31). Even when wearing a mask, an unvaccinated firefighter has a greater risk of contracting and transmitting COVID-19 compared to a vaccinated firefighter. Id. at ¶ 44. Furthermore, firefighters did not wear masks at all times during their 24-hour shifts. Merritt Dep. at 33:12–21, Ex. C to Phillips Decl. (docket no. 24-1 at 24–29); O'Brien 30(b)(6) Dep. 29:1–15. Thus, contrary to Plaintiffs' argument, allowing unvaccinated firefighters to work would increase the risk of spreading COVID-19 even with the use of masks and PPE because masks and PPE are effective only when worn and firefighters could not always wear masks and PPE.

With respect to social distancing, Plaintiffs concede that they could not always social distance while at work. Pls.' Mot. at 3, 22 (docket no. 27); Watson Dep. at 100:14–23, Ex. A to Phillips Decl. (docket no. 24-1 at 1–12); Gleason Dep. at 17:19–18:15, Ex. E to Phillips Decl. (docket no. 24-1 at 38–45). Nevertheless, Plaintiffs contend that social distancing was effective at preventing the spread of COVID-19 because Snohomish Fire "had no known firefighter to firefighter transmissions despite intimate" living and working conditions. Pls.' Mot. at 3, 22. As Dr. Lynch explains, however, social distancing does not eliminate the risk of spreading COVID-19 because it is an airborne virus, meaning it can remain in and circulate between rooms. Lynch Decl.

ORDER - 16

at ¶ 46. Dr. Lynch further explains that social distancing is less effective for firefighters because they regularly interact with patients and coworkers and thus cannot always social distance. Id. at ¶ 43. Although Plaintiffs assert that there were no known COVID-19 transmissions between firefighters, the fact that someone has never tested positive for COVID-19 does not mean that person is not at risk of infection or transmitting COVID-19 to others, as tests may not be accurate, or someone might be asymptomatic and not test. Id. at ¶ 35. Thus, because social distancing measures are not completely effective and Plaintiffs could not always social distance at work, unvaccinated firefighters were at a higher risk of transmitting COVID-19.

With respect to testing, Plaintiffs point out that Snohomish Fire implemented mandatory testing for its vaccinated staff and argue that "the unvaccinated could have been tested safely and effectively" because tests work on unvaccinated and vaccinated individuals. Pls.' Mot. at 20–21. Again, however, Dr. Lynch explains that testing does not eliminate the risk of spreading COVID-19 at work. Tests are not 100% accurate and an individual could take a test, become infected while waiting for the results, and be contagious while at work even after a negative test result. Lynch Decl. at ¶¶ 27, 35. Furthermore, there was a nationwide shortage of tests in late 2021. O'Brien 30(b)(6) Dep. at 14:1–4; McConnell Dep. at 34:20–35:11, Ex. I to Phillips Decl. (docket no. 24-1 at 70–93). Because testing does not eliminate the risk of spreading COVID-19 and there was a lack of available tests in late 2021, unvaccinated firefighters were at a higher risk of spreading COVID-19 even with testing.

ORDER - 17

In sum, the uncontroverted evidence in this case demonstrates that unvaccinated firefighters were at a higher risk of contracting and transmitting COVID-19 even with the use of masks, PPE, testing, and social distancing.  See Lynch Decl. at ¶¶ 41, 44.  Snohomish Fire informed Plaintiffs it could not accommodate their vaccination exemption requests because of the increased health risks of working as unvaccinated firefighters.  Other courts have found undue hardship on employers because of an increased risk of contracting and spreading COVID-19.  See Bordeaux, 2023 WL 8108655, at *12–14 (noting, on a motion for summary judgment, that the nature of the plaintiff's work as an actress required close, unmasked contact with other performers and members of the crew and determining that granting the plaintiff's vaccine accommodation request would have been an undue hardship in part because of the risk of endangering the plaintiff's coworkers); Beuca, 2023 WL 3575503, at *3 (dismissing the plaintiff's claim without leave to amend because "unvaccinated healthcare workers impose an undue hardship on employers due to the increased risk of infection" (citations omitted)); Bushra v. Main Line Health Inc., No. 23-CV-1090, 2023 WL 9005584, at *8 (E.D. Pa. Dec. 28, 2023) (granting summary judgment and finding undue hardship if the defendant had been required to accommodate the plaintiff's religious beliefs because the unvaccinated plaintiff would have been a greater health risk to coworkers and vulnerable patients).[14]  Moreover, the fact that 46 out of 192 Snohomish Fire firefighters requested an exemption and accommodation increased Snohomish Fire's hardship and the risks

---

[14] Bushra is on appeal in the Third Circuit.

ORDER - 18

associated with accommodating Plaintiffs in their patient-care roles while living and working in fire stations. See O'Haplin v. Hawaiian Airlines, Inc., 583 F. Supp. 3d 1294, 1309 (D. Haw. 2022) ("Employers 'may take into account the cumulative cost or burden of granting accommodations to other employees.'" (citation omitted)). Because unvaccinated firefighters are at a greater risk of contracting and spreading COVID-19, regardless of masking, PPE, testing, and social distancing, the Court concludes that Snohomish Fire could not reasonably accommodate Plaintiffs' vaccine exemption requests without undue hardship.[15]

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) Defendant Snohomish Fire's motion for summary judgment, docket no. 23, is GRANTED. Plaintiffs' Title VII and WLAD claims are dismissed.

(2) Plaintiffs' motion for partial summary judgment, docket no. 27, is DENIED.

---

[15] Plaintiffs also argue that (1) unpaid leave is not a reasonable accommodation, and (2) Snohomish Fire used an erroneous standard when analyzing undue hardship prior to this litigation. Pls.' Mot. at 12–16. Because the Court concludes that accommodating Plaintiffs' exemption requests and allowing them to work in their firefighter roles while unvaccinated would have resulted in an undue hardship on Snohomish Fire, and Plaintiffs could not be reassigned to non-healthcare positions, O'Brien Decl. at ¶ 18, the Court concludes that Snohomish Fire's decision to place Plaintiffs on leave instead of allowing them to continue to work while unvaccinated did not violate Title VII or the WLAD. In addition, although Snohomish Fire may have used an incorrect standard to analyze undue hardship prior to this litigation, the Supreme Court did not clarify the undue hardship standard until the Groff opinion published in June 2023. See Def.'s Resp. at 13–14 (docket no. 51). Thus, the Court concludes that Plaintiffs' remaining arguments lack merit.

(3)     The Court having previously dismissed Defendant O'Brien, see Order (docket no. 15), and all claims against all parties having now been resolved, the Court DIRECTS the Clerk to enter Judgment consistent with the Court's ruling in this matter.

(4)     The Clerk is directed to send a copy of this Order and the Judgment to all counsel of record.

IT IS SO ORDERED.

Dated this 25th day of January, 2024.

                                                                                         Thomas S. Zilly
                                                                                         United States District Judge

ORDER - 20